Number 19-2307, United States v. Shane LaGrange Alright, Mr. Wasmer, we'll hear from you first. May it please the court, Mr. Cole. The issue before the court here is whether or not the traffic stop of Mr. LaGrange, which disclosed the methamphetamine and firearm that he was convicted of possessing, was based on reasonable suspicion. The district court found two reasons why the traffic stop was proper, neither supported by the facts or case law. First, was a reasonable suspicion that Mr. LaGrange was driving with a suspended license. That fails because Officer Messer's information was stale. Second, Officer Messer's mistaken belief that there was an arrest warrant out for Mr. LaGrange. That mistaken belief was not objectively reasonable because Officer Messer testified that he was confused about whether or not there was actually a warrant and did nothing to confirm the existence of the warrant. I first want to talk about the suspended license issue. In looking at the case law, the case law generally requires one of three things for there to be reasonable suspicion that someone is driving without a license. First, verification before the stop that the driver's license has been suspended. Second, knowledge of an existing suspension that the officer knows, which the officer obtained a short time before the stop. Or third, knowledge of the length of the suspension and the officer having also knowledge of how long the suspension was for. Now, with regard to the first one, it's undisputed here that the officers did not verify Mr. LaGrange's license suspension until after the stop, even though they were looking for Mr. LaGrange and had several hours to verify the suspension before stopping him. Now, Officer Messer testified, relating to the second aspect here, that he had first met Mr. LaGrange two years earlier. He'd been involved with Mr. LaGrange at traffic stops where Mr. LaGrange was a passenger a handful of times, but he did not specifically testify as to when those stops were or specifically when he last would have checked the validity of Mr. LaGrange's license. Officer Messer did testify that Mr. LaGrange had always been suspended, but always was not defined. That could mean he checked the license once and Mr. LaGrange was suspended then, or he checked it two or three times and Mr. LaGrange was suspended. With regard to the third potential aspect here, there was no testimony by Officer Messer as to him having any knowledge as to the length of any suspension of license that Mr. LaGrange had. So I think we're basically in that second category. Officer Messer did have knowledge that Mr. LaGrange's license had been suspended in the past, and the question then is how stale is that information? The district court, in its opinion and the government here, relies upon this court's decision in Caldwell. In Caldwell, what had happened is the officer had knowledge that Caldwell's license had been suspended several months earlier. There was no discussion in that case, however, as to what several months means. Several is a nonspecific term. It could mean two to three months. It could mean some longer period of time. I'd also note that with Caldwell, there was an alternative basis for affirming the traffic stop because the officer had observed Caldwell speeding, which would provide an independent basis for the stop. Now, cases in other jurisdictions generally limit prior knowledge of a suspension to not being stale to around a month or so. The staleness analysis prevents intrusions upon Fourth Amendment rights merely because a person has a prior criminal history. In this particular case, prior instances of driving without a license or knowledge that the driver does not have a license. Licenses can be reinstated, thus the passage of time increases the probability that the license has been reinstated and the driver is not driving without a license. I think the analysis here starts with the U.S. Supreme Court's decision in Delaware versus Prowse, which held that random driver's license checks are impermissible under the Fourth Amendment. The officer needs reasonable suspicion or probable cause for a traffic stop to then The discussion in the brief, I primarily cited the Spilner case out of Hawaii, which I thought had an excellent discussion of the issue. That case discusses numerous cases, including the Sixth Circuit case in Sandridge and the Tenth Circuit case in Loughran, which I think are two probably of the most significant circuit court cases out there on this issue. In Sandridge, the Sixth Circuit said that 22 days was not stale. In Loughran, the Tenth Circuit said that 22 weeks, which is a little over five months, was stale. And Spilner, after looking at the different case laws, said that those kind of provide the outer limits of when it's stale versus not stale. Now, Stilner's, of course... Mr. Wasmar, whose burden do you think it was here to show that the most recent encounter involving license suspension was within what you say is the permissible time frame? I think it's the government's burden to show when Officer Messer acquired his knowledge. The government is the one that has to prove, I think, that the traffic stop is proper, that it doesn't violate the Fourth Amendment. Why is that? Because it's a warrantless stop? Government has the burden, or does the defendant have the burden in a motion to suppress? Well, I haven't specifically thought about this very much, but I think the government would have the burden of proving it here. The reason I ask is the district court says, quotes the question and answer about the officer can't remember a specific date for the last encounter, and then says defense counsel did not pursue the issue any further, which might imply the district court thought it was defense counsel's responsibility to pin it down. But if it was the government's responsibility, then obviously they could have asked him. Right. And well, as a practical matter, nobody pursued that line of inquiry to pin it down. Basically, all we know from the evidence is that Officer Messer had knowledge that Mr. LaGrange's license had been suspended in the past, but we don't have any evidence as to when that knowledge was, other than it had to be sometime in the prior two years. Right. Okay. I understand the point. If you want to address that further or address the warrant business, that's fine. If you wouldn't mind, though, I'd like before your time runs out for you also to address what I think is an alternative ground that the government urges for affirmance, which is that the tip from the informant about the gun, again, together with the observations that the officers made during the investigation, some of which corroborated the tip, whether that would be an independent basis for a Terry stop. Okay. Whatever order you want. I just had one more comment on Caldwell. Specifically here, Caldwell says several months, and we really don't even have any evidence that prior suspension of Mr. LaGrange's license was within several months. On the warrant issue, just for the moment, I would just note that the Beckman versus McGill case that I cited in the brief, I think is basically directly on point. And based on Beckman, I think it has to be concluded that Officer Messer's belief here that there was an arrest warrant was not objectively reasonable. To address the alternative argument that the government raised on probable cause or reasonable suspicion. It's reasonable suspicion is all they needed. And I think the magistrate judge relied on this too. Yeah. The magistrate judge found that there was reasonable suspicion based on the other issues such as the informant's tip and a couple of other aspects. I'd note that Officer Messer testified that there was not probable cause to stop Mr. LaGrange. He was not asked about whether or not he thought there was reasonable suspicion outside of if you took away the license suspension issue or the possibility of a warrant. The district court did not rule on this and its order. We know all that. We're just seeing if you think it might be enough anyway. Okay. Well, I think first off, no, I do not think it was enough. With regard to the informant, there's really no information on the reliability of the informant. No indications as to whether or not this informant has given reliable information in the past. Except that the informant was corroborating. The defendant turned out to be where he said he would be in a car that he said he would be in. And ultimately, he had a gun just like he said. Okay. Well, those would be facts that aren't known. I wanted to look at... Well, wasn't the tip that he'd be on 33rd Avenue area at a hotel? Or I forget if the tip included hotel, but at least had the general location correct. Yeah, I was looking for the specific information here that was provided. Okay. I don't know that the informant said that Mr. LaGrange was staying at the hotels. All we have is the memorandum, the intelligence memorandum. It says LaGrange has been staying at different hotels on 33rd Avenue Southwest in the memorandum. Right, but it doesn't say if that came from the informant or if that was some kind of independent knowledge that was said. All the informant said that a couple of days earlier, he'd seen Mr. LaGrange with this gun. Counsel, even though the district court did not address this issue, would you agree that this court could properly consider that alternative basis for reasonable suspicion? Yes, I think the case law is clear that the court can affirm on an alternative basis if the court finds that alternative basis to be proven here. But my point on the informant is that there's just insufficient indication of reliability. Also, I think the government mentioned- Don't you think a reasonable officer could read this to believe that the informant had given the information about the hotels? I mean, it all comes in the same three sentences, starting with an informant advised Nussbaum of such and such. It doesn't expressly state where that information came from. I would agree that that could probably be a fair inference. Okay, well, that's running out of time, but we cut to the bottom line. Is there enough there, given the information from the CI, which was corroborated to some degree by the observations, plus the fact that he was driving a car that wasn't his own car, and what they observed when they encountered him in the parking area? Well, the fact that he's driving a car that is not registered to him, I don't think is sufficient because people can drive cars that aren't theirs. There was no indication that this was stolen, that he had no right to drive it, other than potentially him not having a license. With the point that the officer said that Mr. LaGrange was trying to hide his face, I don't think that rises to the level of creating any kind of reasonable suspicion of criminal activity. I don't think a person driving by an officer has to fully look at the officer and wave hello to them. It's a totality of the circumstances test, though, right? It is. The problem here is that the main reasons that the officers gave for the stop was the possibility of an arrest warrant and the possibility that he was driving without a license. But their subjective opinions don't really matter either, do they? Generally, it's an objective test. I'd like to reserve the rest of my time for rebuttal. Very well. You may. Thank you for your argument, Mr. Cole. We'll hear from you. Thank you, Your Honor. May it please the court. I'd like to start where the court had just left off with Mr. Wassmer on the reasonable suspicion argument. As this court is aware, it was at page 13 of Magistrate Roberts' R&R, where he found that the intel memo in and of itself was sufficient to justify the stop. He did... Did you make that argument on appeal? Yes, Your Honor. We argued that reasonable suspicion did exist here. We cited to the 10 factors or circumstances that the judge, Judge Roberts, Magistrate Judge Roberts listed in his R&R. His 10 issues that made up the totality of the circumstances were the intel memo, that the defendant was a known meth user to Officer Messer and the C.I., that he had a specific gun, the pink Glock with camo grips in his possession within 48 hours. He had been arrested before for driving under suspension. It was not his car, which is the Garcia case from the circuit, that he was in the high crime area, the hotels, the hometown in 33rd Avenue, that there was a reasonable mistake of belief by Officer Messer in the outstanding arrest warrant, which is North Carolina v. Hines, that he did hide and conceal his identity from the officers, which is the Morgan case from the 8th Circuit, that he engaged in unusual driving behavior when the officers passed him and he came to a complete stop in the parking lot, which is the Walker case from the circuit, and that when he got out, his hands were at his waist, which is also Morgan and Garcia. And so the issue, when it went up on objection to the District Court, is the District Court looked at two of those factors, primarily the driving under suspension and the reasonable mistake, and relied on Caldwell and North Carolina v. Hines, noting that it didn't have to go any further because the officers were justified in stopping for that reason. But the government contends that all those reasons make up the totality of the circumstances. We also then, likewise, the defendant, in his brief, addressed those two findings of the District Court, which the government did as well. However, noting that these other factors exist as well, should this court determine one of the two factors that the District Court analyzed was not sufficient. As to those issues, the Caldwell case is the circuit of this precedent. I understand the defendant's citing of the Spilner case from Hawaii, which happened 11 years after Caldwell. The problem on this issue is that the record doesn't seem to show knowledge that the suspensions occurred within the Caldwell time period. The record shows that they first encountered the man two years ago, had a handful of encounters, and knew on some prior occasion he had suspended. But it doesn't seem like the questioning and answers established when they knew about the license suspension. So how can we uphold this based on reasonable suspicion of a suspension without going to two years ago is sufficient? Yes, Your Honor. I think the fact is somewhat understated here. And here's what I mean by that, Your Honor. We do know the two-year period that Officer Messer had a professional relationship with the defendant. In that two-year period, he had arrested him once, he knew he had been arrested for suspension, and he had encountered him a handful of other times. He said he was always suspended. What was significant from the record about that is he said when the confirmation came back from dispatch, LaGrange was not only driving under suspension, he had 20 withdrawals in effect at the time. That's 20 withdrawals. That's 20 fines on that license, 20 different ones suspending him. So when he says he's always suspended... When was this confirmation that came back with the 20? Yes, the confirmation was three minutes from the time that Defendant LaGrange was placed in handcuffs. Well, that was after he was already seized. That's not really relevant to what they knew. The reason the government... Sorry. The reason the government contends that's relevant, Your Honor, is the district court found that Messer's testimony was credible. But the issue at the hearing was he said, I know he's always been suspended, and this confirmation of what he already knew was significant. So the fact that he says, I don't remember the last time I encountered him. The government clearly didn't pursue it. He doesn't remember. He doesn't remember. All the government attorney had to do was say, was it within the last five months and you would have been covered by Caldwell. But the way the record stands, it might have been 20 months ago. Isn't that true? When he last encountered the defendant, yes, we could say based on the record, as quiet as it to whether it was 20 months ago, 18 months ago, 12 months ago. Now, Caldwell though, the difference is Caldwell, it's not a bright line about how long was it since the officer encountered the defendant. The thing is it still has to be reasonable and reasonable suspicion. There's a block quote in defendant's brief on page 18 from Spilner. And the first half of that block quote talks about cases and the length of time in which the information wasn't stale. The second part deals with stale. The last case on that block quote of State v. Gibson, the Utah case, the stop was effected 15 months after the last encounter with the defendant. And that one was all right because as the block quote says, the officer knew the defendant's license had been suspended for at least a year. So what the court respectfully, the government would put forth that the court needs to do as the analysis isn't so much this bright line test per month, but a test of was it reasonable for the officer then. Because an officer could stop a defendant even during a suspension period and it still be an unreasonable stop. But the fact of the matter in this case is there were 10 different circumstances and factors under the totality of the circumstances justifying it. And Caldwell was just one of them. The suspension was just one of those that the officer happened to be right about and claimed he knew at the time. The other issue, of course, that the district court looked at was the reasonable mistake. And the district court again credited the officer's testimony regarding that reasonable mistake and noted how that was corroborated by the dash cam and officer's body cam video and further by what the officer did. When he first. Let me ask you about that. A concern I have with that rationale is it seems like the reasonable mistake is based on a memo put out by the police department itself that used the phrase wanted subject in a way that confusingly might have referred to this person even though he wasn't a wanted subject. And so if we adopt the rationale query whether we allow the police department to create its own reasonable suspicion by bootstrapping a bad intelligence memo into a seizure, what do you say about that? I would say that that's not this case, Your Honor. If that was all that Officer Messer had in this case, then that might be of a concern to the court. I thought the district court did say that just the memo by itself was enough. OK. The magistrate court at 13 said the intel memo was sufficient. The district court said that it was clear the officer made a reasonable mistake based upon the officer flipping through the warrants looking for it and the intel memorandum looking for it. But the district court credited Officer Messer's testimony on that because of that and the fact that he knew that the defendant was suspended. So the district court didn't make its decision sort of in the vacuum of it's a reasonable mistake or it's nothing. It was just it was one more factor in light of Caldwell and reasonable mistake that the district court felt was sufficient to justify the stop. Now, the defense raises the Magill case for its argument that the officer's reliance or mistake wasn't reasonable. The government would submit that that case is a completely different case from what we have here as well. In Magill, the officer acted on a hit, not an actual arrest warrant. And when he was in process of arresting the plaintiff, the plaintiff denied that the warrant was in effect, said that the warrant for these misdemeanor traffic violations had been withdrawn. And when the officer checked in with dispatch, dispatch told that officer it's a hit. We won't be able to verify the warrant until morning. And the officer went ahead and arrested anyways. Unsubstantiated information. That's not the case here. This case, there was the reasonable circumstances and equaling a totality of suspicion. But furthermore, the officers waited for confirmation before they went ahead and arrested the defendant on anything. And that would be the right. There was no warrant. Was there? It was just an indication that this person might be wanted. That's correct. There's a difference between those two, is there not? There is. Now, in Magill, there was no warrant either. So you're exactly right. There was no warrant for Mr. LaGrange. The officer had a mistaken belief that there was a warrant, but he didn't act solely on that belief or that information. What really happened is we kind of put the cart before the horse, in a way. The officers were patrolling 33rd Avenue when they first noticed that white Grand Prix that wasn't registered from the defendant. They then had all these suspicious circumstances that fell in line before they recognized Mr. LaGrange. As soon as they recognized Mr. LaGrange, they entered him in the computer for the NCIC and did the U-turn in order to follow him, waiting for confirmation to initiate the stop. It's important to remember, they never initiated a stop here. Mr. LaGrange pulled into the Burger King parking lot. The officers testified. They didn't even block him in. They were going to do a consensual encounter because one can assume they still don't have the confirmation. But as soon as he gets out of the car and the hands are at the waist, they go right into cuffing the defendant and detaining him and telling them they're detaining him because he has paperwork, a warrant, and he's not able to drive. And then in that three-minute time period that Judge Roberts found between the detention and the confirmation, Mr. LaGrange admits he has a knife and he doesn't have a license. So this is not a case, respectfully, that's just a vacuum of if Caldwell falls, the case falls, or if reasonable mistake under Hine falls, the case falls. They're much more enveloped around those two facts. Did the reference to wanted subject even refer to LaGrange? I understood that this intelligence memo described several persons, and the subject said burglary slash wanted subject slash officer safety information. I didn't think burglary applied to LaGrange, and I thought I read that the wanted subject also didn't apply to LaGrange. And the mistake, the alleged reasonable mistake, was in thinking that wanted subject both applied to LaGrange and apparently meant a warrant. Two mistakes. Is that true? It does. The wanted subject was part of the basis for the mistake, yes. The mistake being he thought LaGrange was warranted. I do think the court is correct when it says, so it could be looked at as two mistakes, because wanted subject could be different from someone with an outstanding arrest warrant. No, I'm asking whether wanted subject even referred to LaGrange in the memo. And that it did not. Suppression transcript exhibit one was the redacted copy of the memo. And so there were a number of people and their photographs in that memo. Mr. Drew LaGrange was the last one in that memo. And as you can tell, the CI information, the whole memo is the informant, advise, DOT, investigator, Newsom, and then what he advised them of. It's not a matter of them saying he was wanted. I see my time has expired. But if I haven't answered the court's question or you have a follow-up question, I am happy to do so. Seeing no questions, we thank you for your argument. And we'll hear from Mr. Wasmer and Roboto. OK, thank you, Your Honor. I'd like to point out a couple of things. First, at the top of page 15 of the magistrate judge's report and recommendation, the magistrate judge says, therefore, Messer's and Little's reliance on the memo was reasonable. Moreover, the officers did not rely on the memo alone to provide the reasonable suspicion necessary to allow them to believe criminal activity was afoot. If they had, they would not have looked for the warrant or waited for proof that defendant was driving while his license was under suspension before searching the Grand Prix and defendant's person. To me, that suggests that the magistrate judge thought that the belief that there was a warrant and the belief that Mr. LaGrange was driving without a license suspension were essential facts in the analysis of whether or not there was reasonable suspicion to stop Mr. LaGrange. I'd also like to point out with regard to the Gibson case that's cited at page 18 of my brief, I actually looked back at that case again this morning. I think 15 months, as quoted there, is incorrect. I think it's more like three months. When I looked at that case, they had two different dates for the traffic stop, one in 1981, one in 1982. And the difference between when the officer knew of the event and when the traffic stop was was three months or was 15 months, depending on which of those two dates you use. So I'm not sure which is correct. I'd ask that you look at that. And then the final point I'd like to make is on the McGill case. There was a hit suggesting that there had been a warrant at least, but the officer was unable to verify it at that time. We have less than that in this case. And in McGill, the court found that that was not objectively reasonable. Here, all we have is an inference from the wanted subject in the memo. So unless the court has further questions, that would conclude my argument. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.